## 21927.   BAXTER v. BANK OF GRANTVILLE.

STEPHENS, J.   1. Assuming that where a wife is sued upon a note on which she is surety for her husband and on which she is not liable under the Civil Code (1910), § 3007, a note given by her and accepted in settlement of the pending litigation is a valid and binding obligation by her (*Thornton* v. *Lemon,* 114 *Ga.* 155, 39 S. E. 943), yet where the execution by a wife of a settlement agreement and a note in settlement, which manifestly constituted a benefit to the creditor by giving him a valid and binding obligation on an otherwise uncollectible debt, was procured by the creditor through the instrumentality of the husband, and was a scheme and device on the part of the creditor by which it was sought by fraud to make the wife liable for the debt of her husband, the execution by the wife of the note and settlement agreement did not amount to a bona fide settlement of the pending litigation, but amounted to no more than the execution of a renewal note in settlement of· or as security for the husband's debt, and for this reason the note was not legally binding on her.

2. Upon the trial of a suit by a bank to recover on a note, where the defense was that the defendant was a married woman, and that, as a result of a scheme and device to which the bank was a party, she was induced to execute it in payment of her husband's debt, and that she was not liable thereon; where it appeared from the evidence that the bank at one time had held other notes on which the defendant was security for debts of her husband and her brother, and that the bank knew that because of the defendant's suretyship she was not liable on any of the notes; that the husband and the brother, desiring to make her legally liable on the indebtedness represented by the notes and thereby sharing in the brother's liability, employed a lawyer to devise a method by which she would be made liable, and so informed the bank; and where the husband also was trying to help the bank and all concerned, so that they all could "carry on," and the bank instituted suit against the wife, but, before so doing, the lawyers for the bank talked with the lawyer the husband had employed, and the husband stated to the bank that he would have the defendant sign the papers if the bank and the husband's lawyer would come to an agreement and could get together, and told the bank he would have no trouble in getting the defendant to sign, that he would tell her the papers were connected with the business the husband and the brother had been engaged in, and "she would never have to pay;" that the bank knew that the wife "did not know what it was about," that she did not read any papers and would sign whatever the husband asked her to sign; that the bank and the husband's lawyer got together, and an agreement settling the suits against the defendant was prepared for her signature; that this agreement was in accordance with instructions which the husband communicated to the bank and had given to the lawyer; that the husband took the settlement agreement thus prepared to the defendant, who signed it without reading it and without knowing what she was signing; that this agreement provided for a settlement of the suit pending against her, and the execution of a new note to the bank for an amount considerably less than the principal of the note sued on, and also provided for a loan by the bank to her of an additional sum of money, all of which was to be secured in a manner indicated; that the amount of the loan was afterward placed to her credit in the bank, and she gave to the lawyer employed by the husband a power of attorney to draw money from the bank; that the arrangement which the husband's lawyer made with the bank was one under which the husband would "get some more money;" and it does not appear that the bank had any dealings with the defendant in the execution of the papers in settlement of the suits, but the husband attended to this; and that when the defendant and her husband signed the papers neither knew of the pendency of the suit against her, the inference is authorized that the bank, knowing that the defendant was not liable on notes which she had executed as surety for debts of her husband and of her brother, agreed to a proposed scheme by the husband by which the wife would become legally responsible for her husband's debts and in furtherance thereof instituted suit against her upon the notes, with the intention of effecting a settlement with her which would render her legally liable to the bank; that in furtherance of perfecting such settlement the bank consulted with the husband's lawyer,

and turned the papers over to the husband for the purpose and intention of having the husband procure the defendant's signature thereto by telling her that she would not be liable, and that the papers were merely some matter connected with the husband's business, and she signed them without reading; and that the bank was thus a party to a scheme and device by which the defendant was fraudulently induced to execute an agreement in settlement of the suit. There was thus presented an issue of fraud for determination by a jury; and the court erred in directing a verdict for the plaintiff.

*Judgment reversed. Jenkins, P. J., and Sutton, J., concur.*

DECIDED SEPTEMBER 30, 1932.

*Atkinson & Allen,* for plaintiff in error. *Hall & Jones,* contra.