**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 8, 2018**

# In the Court of Appeals of Georgia

A17A1699. GROUP RESOURCES, INC. v. CITY OF WAYCROSS
   et al.

BETHEL, Judge.

This appeal arises out of a breach of contract claim brought by Group Resources, Inc. against the City of Waycross and Raphel Maddox[1] (collectively "City Defendants"). Group Resources and the City Defendants filed cross-motions for summary judgment on the issue of whether the fraudulent misrepresentation claims asserted against Group Resources in a separate lawsuit relieved the City Defendants of their obligation to indemnify Group Resources under an Administrative Services Agreement ("Agreement"). We answer in the affirmative and find that the trial court was authorized to grant summary judgment in favor of the City Defendants.

---

[1] Raphel Maddox was sued in his capacity as the City of Waycross's human resources director.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the non-movant." *BBL-McCarthy, LLC v. Baldwin Paving Co.*, 285 Ga. App. 494, 494-95 (646 SE2d 682) (2007) (citations omitted).

The facts of this case are undisputed. In 2012, Group Resources contracted with the City Defendants to act as the third-party administrator for the City of Waycross's employee health benefit plan (the "Plan"). Per the terms of the Agreement, Group Resources acted as the Plan's administrative services agent and was responsible for verifying eligibility, authorizing coverage, handling claims, and processing payments for the City of Waycross's employees and their eligible dependents under the plan.

The indemnification provision of the Agreement pertinent to the issues on appeal reads:

The Plan Administrator and the [City Defendants] agree to indemnify and hold harmless [Group Resources] from and against any claim, action, cause of action, loss (including the loss of a PPO discount due to the Plan Administrator's failure to timely fund benefit payments),

2

liability, cost, expense, fee, damage, tax, or penalty (including reasonable attorney and accountant fees) which may be made or imposed by any employee or dependant or any other person or persons (including any governmental authority or service provider to the Plan) resulting from, or in connection with, the operation of the Plan (whether before, during, or following the term of this Agreement) or any action or inaction by [Group Resources], *unless such claim, action, cause of action, liability, loss, cost, expense, fee, damage, tax or penalty results from [Group Resources's] willful misconduct or fraud...*

In June 2013, a hospital sued Group Resources in a Florida federal court, claiming that Group Resources underpaid charges owed to the hospital for services rendered to a patient covered by the Plan. The hospital alleged, *inter alia*, that Group Resources fraudulently misrepresented the amount the hospital would be reimbursed for a patient who was covered by the Plan and had received treatment at the hospital.

During the pendency of that suit, Group Resources sent two letters to the City Defendants demanding indemnification from any losses incurred as a result of the pending litigation. Group Resources also filed a motion to add the City Defendants to the lawsuit, which was denied. After a year and a half of litigation in Florida, Group Resources negotiated a settlement with the hospital prior to the start of trial.

Group Resources filed the action giving rise to this appeal against the City Defendants alleging, *inter alia*, breach of contract for its failure to indemnify it in the Florida lawsuit, and seeking reimbursement for litigation costs and settlement. After a hearing on cross-motions for summary judgment, the trial court issued an order summarily granting the City Defendants' motion and denying Group Resources's motion, meaning that the City Defendants did not have to indemnify Group Resources for its costs and expenses incurred in the Florida lawsuit. This appeal followed.

1. Group Resources argues that the trial court misinterpreted the terms of the indemnity provision in the Agreement. Specifically, in order to trigger the exclusionary clause of the indemnity provision, Group Resources contends that it must have actually acted with willful misconduct or fraudulently, and that a mere allegation of such conduct is insufficient. We disagree because the term "claim," as it appears in the Agreement, does not require an adjudication on the merits of a willful misconduct or fraud claim in order to trigger the exclusionary clause.

Because the indemnity clause is a contractual provision, its interpretation is a question of law, and we therefore review the trial court's ruling on this issue de novo.

4

*Firmani v. Dar-Court Builders, LLC*, 339 Ga. App. 413, 425 (4) (793 SE2d 596) (2016). "The cardinal rule of construction is to ascertain the intention of the parties. The language which the parties have used will be looked to for the purpose of finding that intention, which once ascertained will prevail over all other considerations, in determining the nature of the agreement." *Serv. Merch. Co. v. Hunter Fan Co.*, 274 Ga. App. 290, 292 (1) (617 SE2d 235) (2005) (footnotes and punctuation omitted). "No construction is required or even permitted when the language employed by the parties in the contract is plain, unambiguous, and capable of only one reasonable interpretation." *Freund v. Warren*, 320 Ga. App. 765, 768-69 (1) (740 SE2d 727) (2013) (citation omitted). Moreover, "the words of a contract of indemnification must be construed strictly against the indemnitee." *Svc. Merch. Co.*, 274 Ga. App. at 292 (1) (footnotes omitted).

With these principles in mind, we are unpersuaded by Group Resources's contention that the indemnification provision of the Agreement is ambiguous or that it did not intend for the term "claim" to include allegations of fraud but rather required proof of fraud before the City Defendants could avoid its obligation to indemnify. The indemnification provision expressly releases the City Defendants from any obligation to indemnify Group Resources for any "claim, action, cause of

action, [or] liability" resulting from Group Resources's willful misconduct or fraud. Notably, the indemnification provision is bereft of any definition for the term "claim" that requires an adjudication, judgment, or showing of proof on a claim for fraud.

Thus, construing the term according to its plain meaning, "claim" is commonly understood as "[a] statement that something yet to be proved is true." Black's Law Dictionary (10th ed. 2014). It is clear from the plain language of the indemnification provision that allegations such as those in the Florida lawsuit fall into this definition of a claim and that the exclusionary language applies. Therefore, the trial court was authorized to grant the City Defendants' motion for summary judgment.

2. In light of our holding in Division 1 that the City Defendants did not breach their duty to indemnify Group Resources under the terms of the Agreement, we do not need to address the merits of Group Resources's remaining enumerations, as they are now moot.

*Judgment affirmed. Branch, J., concurs. McFadden, P. J., dissents.**

**\* THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2 (a)**

A17A1699. GROUP RESOURCES, INC. v. CITY OF WAYCROSS et al.

MCFADDEN, Presiding Judge, dissenting.

I respectfully disagree with the majority decision to affirm the grant of summary judgment to the City Defendants. Contrary to the majority's interpretation of the contractual indemnification provision, that provision requires a showing of willful misconduct or fraud by Group Resources in order for the City Defendants to avoid their contractual obligation to indemnify. Because the City Defendants have failed to show the absence of any genuine issues of material fact as to the alleged willful misconduct or fraud of Group Resources, summary judgment in the defendants favor was not authorized. Likewise, there are genuine issues of material fact as to the other grounds for summary judgment raised by the City Defendants. Accordingly, I dissent.

1. *Indemnification provision.*

The indemnification provision contained in the contract provides, in pertinent part, that the City Defendants agree to indemnify and hold harmless Group Resources

> from and against any claim, action, cause of action, loss . . ., liability, cost, expense, fee, damage, tax, or penalty (including reasonable attorney and accountant fees) which may be made or imposed by any . . . persons . . . resulting from, or in connection with, the operation of the Plan . . . , *unless such claim, action, cause of action, loss, cost, expense, fee, damage, tax or penalty results from [Group Resources'] willful misconduct or fraud.* (Emphasis supplied).

As the majority notes, Group Resources sought indemnification pursuant to this provision for the costs and expenses it incurred in defending and settling a federal action seeking payment for services rendered to a patient covered by the Plan. In affirming the trial court's grant of summary judgment to the City Defendants, the majority focuses solely on the word "claim" as used in the exception emphasized above; the majority concludes that because the "claim" in the federal action alleged fraud by Group Resources, then the exception applies and the defendants are not bound by the indemnification agreement. However, the majority has ignored the qualifying language of the exception, which plainly provides that the exception applies only if the claim, not to mention any costs and expenses, "*results from* willful misconduct or fraud" of Group Resources. (Emphasis supplied.) Thus, contrary to the

2

majority's finding, the plain language of this exception does not provide that it applies if a claim merely *alleges* fraud; rather, it applies only if the claim *results* from fraud.

The verb "results" means "'[t]o happen as a consequence." The American Heritage Dictionary of the English Language (5th Ed. 2018), https://ahdictionary.com/word/search.html?q=results. So in order for the exception to the indemnification requirement to apply, the claim (or the expenses or the costs) in question must have happened as a consequence of fraud by Group Resources. Whether or not the federal claim at issue in this case resulted from, or happened as a consequence of, fraud by Group Resources necessarily requires a finding that Group Resources in fact committed fraud; such a determination cannot rest on a mere allegation of fraud. Although Group Resources settled that federal claim, it has averred that the settlement was not an admission of liability or of fraud, but instead was a decision to mitigate its losses from the lengthy litigation. Under these circumstances, there remain genuine issues of material fact as to whether the federal claim, as well as the costs and expenses incurred by Group Resources, resulted from fraud by Group Resources. Accordingly, the defendants were not entitled to summary judgment.

2. *Official immunity.*

Defendant Raphel Maddox also argues that he, individually, was entitled to summary judgment on the basis of official immunity. But he has failed to show by the record that there are no genuine issues of material fact as to the issue of such immunity.

"[T]he doctrine of official immunity provides that a public officer or employee may be personally liable for his negligent ministerial acts, but he may not be held liable for his discretionary acts unless such acts are wilful, wanton, or outside the scope of his authority." *Clive v. Gregory*, 280 Ga. App. 836, 841 (2) (635 SE2d 188) (2006) (citation omitted). "A discretionary act calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." *Smith v. Lott*, 317 Ga. App. 37, 38 (730 SE2d 663) (2012) (citation and punctuation omitted).

Maddox claims that any role he had in the refusal to indemnify Group Resources under the terms of the agreement constituted discretionary actions by him that are protected by his official immunity. The only evidence he has pointed to in support of this claim is evidence that he forwarded copies of Group Resources'

requests for indemnification to the city's insurance carrier and the city attorney. But he has not cited any other evidence concerning the scope of his official authority; any evidence showing that his purported discretionary actions were done without wilfulness, malice, or corruption; or any evidence establishing without question that his actions were not negligently performed ministerial acts.

A defendant moving for summary judgment must show that there is no genuine issue of material fact and he "may do this by either presenting evidence negating an essential element of the plaintiff's claims or establishing from the record an absence of evidence to support such claims." *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010) (citation and punctuation omitted). Maddox has failed to carry this burden and therefore was not entitled to summary on this basis.

3. *Voluntary payment doctrine.*

The City Defendants also contend that the voluntary payment doctrine set forth in OCGA § 13-1-13 applies to Group Resources' settlement of the federal lawsuit and thus precludes Group Resources' instant indemnity claim. The contention is without merit.

OCGA § 13-1-13 provides:

Payments of claims made through ignorance of the law or where all the facts are known and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the other party are deemed voluntary and cannot be recovered unless made under an urgent and immediate necessity therefor or to release person or property from detention or to prevent an immediate seizure of person or property. Filing a protest at the time of payment does not change the rule prescribed in this Code section.

This voluntary payment "doctrine generally bars the recovery of *excess* payments, not payments made to a third party who is not involved in the litigation." *Hibbard v. McMillan*, 284 Ga. App. 753, 756 (2) (645 SE2d 356) (2007) (emphasis in original; citations omitted). See also *Read v. Benedict*, 200 Ga. App. 4, 9 (4) (406 SE2d 488) (1991). While the doctrine is generally applied in the context of overpayment between the parties to a lawsuit, that does not mean that the doctrine "can never apply in a case involving a payment to a third party." *Progressive Electrical Services v. Task Force Construction*, 327 Ga. App. 608, 618 (2) (f), n. 5 (760 SE2d 621) (2014).

In this case, Group Resources is not seeking recovery of an excess payment made to the City Defendants, but instead is seeking to enforce a contractual indemnification provision in order to recover costs and expenses incurred in an action brought by a third-party. Under *Progressive*, supra at 618, the voluntary payment doctrine may apply to bar this type of third-party payment. Assuming that the doctrine

6

can be applied here, Group Resources nevertheless asserts that the doctrine does not bar recovery under the indemnification clause because the decision to settle the federal case was "made under an urgent and immediate necessity." OCGA § 13-1-13. In that regard, we have held that the doctrine applies and bars recovery where "the evidence submitted on the motion [for summary judgment] affirmatively shows that [the plaintiff] voluntarily paid to [the defendant] the sums of money in settlement of a disputed claim, and that [the plaintiff] was not under any duress or compulsion to make payment, and having paid it out under these conditions, he cannot recover it back." *Crawford v. Gulf States Mtg. Co.*, 153 Ga. App. 393, 394 (265 SE2d 327) (1980) (citations and punctuation omitted).

Here, however, the evidence does not affirmatively show that Group Resources was not under any duress to make the settlement. On the contrary, Group Resources has shown that after a year-and-a-half of litigation, its legal fees and expenses had ballooned to an exorbitant amount, that the City Defendants had failed to respond to Group Resources repeated requests for indemnification under the contract, and that even greater expenses would have been incurred during a lengthy trial that potentially could have ended in a judgment that would have forced the company out of business. Under these circumstances, I believe that there is a genuine issue of material fact as

7

to whether the decision to settle was made under an urgent and immediate necessity. Accordingly, summary judgment on the basis of the voluntary payment doctrine would be improper.