McFadden, Presiding Judge, dissenting.
I respectfully disagree with the majority decision to affirm the grant of summary judgment to the City Defendants. Contrary to the majority's interpretation of the contractual indemnification provision, that provision requires a showing of willful misconduct or fraud by Group Resources in order for the City Defendants to avoid their contractual obligation to indemnify. Because the City Defendants have failed to show the absence of any genuine issues of material fact as to the alleged willful misconduct or fraud of Group Resources, summary judgment in the defendants favor was not authorized. Likewise, there are genuine issues of material fact as to the other grounds for summary judgment raised by the City Defendants. Accordingly, I dissent.
1. Indemnification provision.
The indemnification provision contained in the contract provides, in pertinent part, that *144 the City Defendants agree to indemnify and hold harmless Group Resources
from and against any claim, action, cause of action, loss ..., liability, cost, expense, fee, damage, tax, or penalty (including reasonable attorney and accountant fees) which may be made or imposed by any ... persons ... resulting from, or in connection with, the operation of the Plan ..., unless such claim, action, cause of action, loss, cost, expense, fee, damage, tax or penalty results from [Group Resources'] willful misconduct or fraud. (Emphasis supplied).
As the majority notes, Group Resources sought indemnification pursuant to this provision for the costs and expenses it incurred in defending and settling a federal action seeking payment for services rendered to a patient covered by the Plan. In affirming the trial court's grant of summary judgment to the City Defendants, the majority focuses solely on the word "claim" as used in the exception emphasized above; the majority concludes that because the "claim" in the federal action alleged fraud by Group Resources, then the exception applies and the defendants are not bound by the indemnification agreement. However, the majority has ignored the qualifying language of the exception, which plainly provides that the exception applies only if the claim, not to mention any costs and expenses, "results from willful misconduct or fraud" of Group Resources. (Emphasis supplied.) Thus, contrary to the majority's finding, the plain language of this exception does not provide that it applies if a claim merely alleges fraud; rather, it applies only if the claim results from fraud.
The verb "results" means " '[t]o happen as a consequence." The American Heritage Dictionary of the English Language (5th Ed. 2018), https://ahdictionary.com/word/search.html?q=results. So in order for the exception to the indemnification requirement to apply, the claim (or the expenses or the costs) in question must have happened as a consequence of fraud by Group Resources. Whether or not the federal claim at issue in this case resulted from, or happened as a consequence of, fraud by Group Resources necessarily requires a finding that Group Resources in fact committed fraud; such a determination cannot rest on a mere allegation of fraud. Although Group Resources settled that federal claim, it has averred that the settlement was not an admission of liability or of fraud, but instead was a decision to mitigate its losses from the lengthy litigation. Under these circumstances, there remain genuine issues of material fact as to whether the federal claim, as well as the costs and expenses incurred by Group Resources, resulted from fraud by Group Resources. Accordingly, the defendants were not entitled to summary judgment.
2. Official immunity.
Defendant Raphel Maddox also argues that he, individually, was entitled to summary judgment on the basis of official immunity. But he has failed to show by the record that there are no genuine issues of material fact as to the issue of such immunity.
"[T]he doctrine of official immunity provides that a public officer or employee may be personally liable for his negligent ministerial acts, but he may not be held liable for his discretionary acts unless such acts are wilful, wanton, or outside the scope of his authority." Clive v. Gregory , 280 Ga. App. 836, 841 (2), 635 S.E.2d 188 (2006) (citation omitted).
"A discretionary act calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." Smith v. Lott , 317 Ga. App. 37, 38, 730 S.E.2d 663 (2012) (citation and punctuation omitted).
Maddox claims that any role he had in the refusal to indemnify Group Resources under the terms of the agreement constituted discretionary actions by him that are protected by his official immunity. The only evidence he has pointed to in support of this claim is evidence that he forwarded copies of Group Resources' requests for indemnification to the city's insurance carrier and the city attorney. But he has not cited any other evidence concerning the scope of his official authority; any evidence showing that his purported discretionary actions were done without wilfulness, malice, or corruption; or any evidence establishing without question that his actions *145 were not negligently performed ministerial acts.
A defendant moving for summary judgment must show that there is no genuine issue of material fact and he "may do this by either presenting evidence negating an essential element of the plaintiff's claims or establishing from the record an absence of evidence to support such claims." Cowart v. Widener , 287 Ga. 622, 623 (1) (a), 697 S.E.2d 779 (2010) (citation and punctuation omitted). Maddox has failed to carry this burden and therefore was not entitled to summary on this basis.
3. Voluntary payment doctrine.
The City Defendants also contend that the voluntary payment doctrine set forth in OCGA § 13-1-13 applies to Group Resources' settlement of the federal lawsuit and thus precludes Group Resources' instant indemnity claim. The contention is without merit.
OCGA § 13-1-13 provides:
Payments of claims made through ignorance of the law or where all the facts are known and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the other party are deemed voluntary and cannot be recovered unless made under an urgent and immediate necessity therefor or to release person or property from detention or to prevent an immediate seizure of person or property. Filing a protest at the time of payment does not change the rule prescribed in this Code section.
This voluntary payment "doctrine generally bars the recovery of excess payments, not payments made to a third party who is not involved in the litigation." Hibbard v. McMillan , 284 Ga. App. 753, 756 (2), 645 S.E.2d 356 (2007) (emphasis in original; citations omitted). See also Read v. Benedict , 200 Ga. App. 4, 9 (4), 406 S.E.2d 488 (1991). While the doctrine is generally applied in the context of overpayment between the parties to a lawsuit, that does not mean that the doctrine "can never apply in a case involving a payment to a third party." Progressive Electrical Services v. Task Force Construction , 327 Ga. App. 608, 618 (2) (f), n. 5, 760 S.E.2d 621 (2014).
In this case, Group Resources is not seeking recovery of an excess payment made to the City Defendants, but instead is seeking to enforce a contractual indemnification provision in order to recover costs and expenses incurred in an action brought by a third-party. Under Progressive , supra at 618, 760 S.E.2d 621, the voluntary payment doctrine may apply to bar this type of third-party payment. Assuming that the doctrine can be applied here, Group Resources nevertheless asserts that the doctrine does not bar recovery under the indemnification clause because the decision to settle the federal case was "made under an urgent and immediate necessity." OCGA § 13-1-13. In that regard, we have held that the doctrine applies and bars recovery where "the evidence submitted on the motion [for summary judgment] affirmatively shows that [the plaintiff] voluntarily paid to [the defendant] the sums of money in settlement of a disputed claim, and that [the plaintiff] was not under any duress or compulsion to make payment, and having paid it out under these conditions, he cannot recover it back." Crawford v. Gulf States Mtg. Co. , 153 Ga. App. 393, 394, 265 S.E.2d 327 (1980) (citations and punctuation omitted).
Here, however, the evidence does not affirmatively show that Group Resources was not under any duress to make the settlement. On the contrary, Group Resources has shown that after a year-and-a-half of litigation, its legal fees and expenses had ballooned to an exorbitant amount, that the City Defendants had failed to respond to Group Resources repeated requests for indemnification under the contract, and that even greater expenses would have been incurred during a lengthy trial that potentially could have ended in a judgment that would have forced the company out of business. Under these circumstances, I believe that there is a genuine issue of material fact as to whether the decision to settle was made under an urgent and immediate necessity. Accordingly, summary judgment on the basis of the voluntary payment doctrine would be improper.